United States District Court
District of Nebraska

| | |
|---|---|
| KD and JD, Parents, Natural Guardians and Next Friends of LD, | Case No. __17:_____ |
| Plaintiffs, | |
| v. | Complaint & Jury Demand |
| Douglas County Public School District No. 001, a/k/a Omaha Public Schools, | Civil Rights Violation And Related Claims |
| Daniel Bartels, | |
| Brian Robeson, | |
| Joe Doe and Jane Doe, Real Names Unknown | |
| Defendants. | |

Plaintiffs allege:

### Case Overview

1. LD, a minor child, was subject to repeated statutory rape and sexual assault at school by a teacher. Observations, suspicions, and strong circumstantial evidence were reported by faculty members who "Saw Something, and Said Something". The School and its administrator(s) *Did Nothing*.

2. This case arises out of a) deliberate indifference and intentional infringement on the constitutional rights of a minor child and her parents in violation of 42 *USC* § 1983 and 20 *USC* § 1681, and b) negligent hiring, retention and supervision acts and omissions constituting torts for which sovereign immunity has been waived under state law. For the federal claims asserted here, there is no sovereign immunity under *US Const* Amend XI for suits in federal court against the defendants, including the School District as provided by 42 *USC* §§ 2000d-7(a).

3. KD and JD are husband and wife and the parents of LD. LD is a minor child; she was under 16 years of age when the events described occurred. These events commenced when LD was 13 years of age. LD was repeatedly sexually assaulted and raped at school by a teacher, Defendant Brian Robeson, while she was a student at Alfonza W. Davis Middle School; a school within District No. 001a/k/a Omaha Public Schools (OPS). This occurred while Defendant Daniel Bartels was deliberately indifferent with respect to the actions and conduct of Robeson, including indifference to direct reports of Robeson's actions. Bartels, and other administrators remaining to be identified, and sued as John Doe and Jane Doe, repeatedly ignored, failed to investigate, and failed to take any steps to protect LD. Defendant OPS is liable for this deliberate indifference and violation of LD's civil rights under Title IX of the U.S. Code. Bartels, the Doe Defendants and Robeson are liable to Plaintiffs for violations of LD's civil rights under 42 *USC* § 1983.

4. OPS also committed negligence in hiring, renewing the employment of, supervising and overseeing Robeson, and failing to have policies and procedures in place to do so. A Tort Claim within the Courts supplemental jurisdiction is also asserted. Sovereign immunity with respect to the tort claim has been waived by the State of Nebraska. *Neb Rev Stat* §13-901, *et seq*.

5. Robeson also committed battery, and was aided by Bartels' and the Doe Defendants' deliberate indifference, to commit intentional infliction of emotional distress against LD and her parents.

## Jurisdiction, Venue, Parties

6. The United States District Court for the District of Nebraska has subject matter jurisdiction pursuant to 28 *USC* § 1331. Questions of federal law are presented for adjudication. Those questions include:

    6.1. Were the rights of one or more of the Plaintiffs, as guaranteed by 20 *USC* § 1681 and *US Const* Amend XIV, violated by the actions of Defendant OPS?

D18008

6.2. Was LD, on the basis of her sex, subjected by OPS to discrimination under educational programs and activities receiving federal financial assistance contrary to 20 *USC* § 1681?

6.3. Was LD discriminated against by OPS on the basis of sex as prohibited by the regulations of the US Department of Education including those at 34 *CFR* § 106 subpart D, including § 106.31(a) & (b)(1)-(4), (6) & (7)?

6.4. Were LD's US Const Amend XIV well-established constitutional rights violated by Bartels, Robeson and the Doe Defendants, and do Plaintiffs have rights to remedies under the *Civil Rights Act*, 42 *USC* § 1983?

6.5. What damages are due under the federal claims?

6.6. What attorney's fees and costs should be awarded Plaintiffs' lawyers under the federal claims under 42 *USC* § 1988?

7. This Court has supplemental jurisdiction pursuant to 28 *USC* § 1367(a) over Plaintiffs' state law claims against OPS, Bartels, Robeson and the Doe Defendants. These additional claims arise under the *Nebraska Political Subdivision Tort Claims Act, Neb Rev Stat* §13-901, and the waiver of sovereign immunity it unequivocally expresses. These claims are also within this Court's supplemental, or pendent, jurisdiction. Supplemental jurisdiction is also present under 28 *USC* §1367 for the state law claims against Robeson and the aiding and abetting claims against Bartels and the Doe Defendants. These claims arise out of, and form part of, the same controversy and facts as do the federal claims.

8. Venue is proper in the District of Nebraska pursuant to 28 *USC* § 1391(b) because Plaintiffs, one or more of the Defendants reside there, and a substantial part of the events giving rise to the claims occurred there.

9. **Plaintiffs.** KD and JD are husband and wife and the parents of LD. LD is a minor child; she was under sixteen years of age when the events described occurred. These events commenced when LD was sixteen years of age.

10. **Defendant OPS.** Defendant, Douglas County Public School District No. 001, a/k/a Omaha Public Schools ("OPS"), is a political subdivision and School District

3

providing educational care and instruction to students in Omaha, Douglas County, Nebraska. OPS is the largest provider of educational services in Nebraska.

11. **Defendant Bartels.** Defendant, Daniel Bartels, is an administrator who was employed by OPS at all relevant times and acted as Principal of the Alfonza W. Davis Middle School. He was authorized to intervene on LD's behalf and take steps to protect her but failed and refused to do so, with deliberate indifference, despite actual, direct, and affirmative disclosures to him of events and circumstances requiring intervention. Mr. Bartels chose instead to protect Brian Robeson, his personal friend and to disregard and ignore information reported to him in writing, and face-to-face, by teachers in his public school building. He also chose to ignore the overt actions, statements and observations of students in his school building and matters openly and easily discernible by him as he walked the halls of the school building for which he was responsible.

12. **Doe Defendants.** Other administrators of OPS whose identities are not known were also deliberately indifferent and were also negligent in protecting LD, supervising and employing Robeson, and in their indifference and inaction. They are sued as John Doe and Jane Doe, real names unknown. Plaintiffs require discovery to determine the extent to which reports were made by teachers and others to personnel in OPS administration apart from Bartels, concerning Robeson's actions toward LD.

13. **Defendant Robeson.** Defendant, Brian Robeson, was formerly employed by the Defendant School District as a teacher and was assigned to teach at the Alfonza W. Davis Middle School. He is now incarcerated in the Nebraska State Penitentiary, serving a forty-year incarceration by reason of his conviction for sex acts perpetrated upon LD. Robeson engaged, at and away from school during his employment, in the grooming, seduction, and conduct of a sexual relationship with LD while Robeson was more than thirty years of age and LD was under sixteen years of age. This conduct involved multiple instances, believed to be fifty or more, of statutory rape, including penetration of LD's body at school, and other acts of statutory rape elsewhere.

## The Facts

14. All allegations above are renewed here.

## Background

15. LD, daughter of KD and JD, is a minor, sixteen years of age. At relevant times, LD was ages fourteen and fifteen. She was a student in the Defendant Omaha Public School District at all relevant times. LD's parents, KD and JD, are professional educators.

16. LD enrolled in the Alfonza W. Davis Middle School in northwest Omaha commencing in the autumn of 2013. There LD was assigned to a Home Room where she first encountered Brian Robeson. Robeson was the "Home Room" teacher assigned by the District to the Home Room to which LD was to report. Neither LD nor her parents knew, at the time, any of these things about Robesen: Robeson was a person who had a significant legal history and a significant history of substance abuse, had been suspected of inappropriate sexual interests in young persons previously, and was not certified to teach in certain areas to which he was assigned instructional duties by the District. Plaintiffs now believe these things were known to OPS, Bartels, and the Doe Defendants.

17. As an employee of the District and its agent, Robeson had regular contact with students, including LD. He was given authority over them.

18. Robeson enjoyed a friendship with Daniel Bartels. Bartels, also an employee of the Defendant School District, was Principal of the Alfonza W. Davis Middle School and was Robeson's immediate superior. Bartels was the administrator of OPS with executive authority at the school. Bartels had the responsibility to oversee performance and fulfillment of OPS policies, and to create or modify policies on a building level. Bartels was the administrator with on-site responsibility for the safety of Alfonza W. Davis Middle School students.

19. Bartels was feted for the excellent manner in which he handled Robeson. These congratulations of Bartels by the District occurred after the wrongful conduct, in which Robeson engaged as described in detail below, became publicly known. These congratulations were part of an effort by OPS Administrators, including the Doe Defendants, to cover up their deliberate indifference to reports of improprieties by

Robeson against LD, and their negligence in hiring, renewing employment, and failing to supervise or oversee Robeson.

## Well Established Constitutional Rights

20. As a student of the Defendant School District, LD had and enjoyed well established legal and constitutional rights which were or should have been known to Defendants. These included:

- 20.1. The right to not be excluded, discriminated against, denied participation in or benefits of, and not to be subjected to discrimination under, any educational activity of the District receiving federal financial assistance, as guaranteed by 20 *USC* § 1681(a), and *US Const* Amend XIV & V guarantees of due process and equal protection of the law, and 42 *USC* § 1983 authorizing redress when infringements upon these well established rights are committed by persons acting under color of state law.[1]
- 20.2. The right to be free from gender discrimination.[2]
- 20.3. The right as a student, to be free from sexual harassment, assault, battery and rape by a public school teacher including the right to bodily integrity.[3]
- 20.4. The right to be free from deliberate indifference by public school administrators about reports of sexual harassment by a public school teacher against a student based on her gender.[4]
- 20.5. The right to attend a public school where the officials could not with impunity maintain a custom, practice, or usage that communicated condonation of sexually assaultive behavior by its indifference.[5]

---

[1] *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998).
[2] *Wimbley v Cashion,* 588F3d 969 (8th Cir 2009).
[3] *Rogers v. City of Little Rock, Ark.,* 152 F3d 790, 795 (8th Cir1998); *Alexander v. DeAngelo,* 329 F3d 912, 916 (7th Cir 2003)
[4] *Stoneking v. Bradford Area School Dist.*, 882 F2d 720 (3d Cir 1989); *Kahle v Leonard,* 477 F3d 544 (8th Cir 2007); *Cox v. Sugg,* 484 F3d 1062, 1066 (8th Cir2007) (to hold university officials liable under the equal-protection clause of the Fourteenth Amendment for a professor's sexual harassment, student had to show that the officials were deliberately indifferent to the harassment)

21. Robeson, with Bartels' consent given through deliberate indifference, engaged upon a program of grooming LD for seduction and a sexual relationship. Robeson successfully groomed LD, persuaded her that intimate and sexual contact, including sexual penetration of her body on fifty or more occasions, and fondling and caressing of her breasts, buttocks and vaginal tissue on hundreds of occasions, was consistent with her educational opportunities and experiences, and in her best interests as a student and otherwise. LD became persuaded by Robeson to succumb to the sexual advances, accept his text messages and email sent during the school day, and remain silent about Robeson's abuse of LD, who was too young to appreciate his actions.

### Robeson's Actions: Observed & Reported But Deliberately Disregarded

22. Robeson's behaviors toward LD were widely witnessed, observed, openly and extensively discussed by OPS faculty, employees and students at Alfonza W. Davis Middle School. These observations were actually reported to OPS and specifically to the OPS official with direct authority and responsibility to intervene and protect LD. This official was Bartels. Robeson's overt violations of OPS policy governing distance to be maintained between teachers and students was deliberately disregarded.

23. Bartels had authority to address the alleged discrimination and institute corrective measures on LD's behalf by virtue of his position as Alfonza W. Davis Middle School Principal. Bartels had actual knowledge of discrimination in the school's programs and in the actions of Robeson, its professional teacher and employee, in his dealings with LD. Bartels also knew that LD was selected for special treatment and the intimate attention of Robeson because of her gender. Bartels knew that Robeson discriminated against LD by selecting her, on the basis of gender, to succumb to his advances. However, Bartels dismissed reports of Robeson's actions, saying of Robeson things like (paraphrased): "He is a good guy, and close to his students." "He is going through a divorce. Leave him alone."

---

[5] Fn 1, *Wimbley*; 2 Nahmod, *Civil Rights & Civil Liberties Litigation: The Law of Section 1983 §8:31* (Westlaw Updated Sept 2016). *Butler v. Dowd,* 979 F2d 661, 675 (8th Cir 1992)(deliberate indifference to rape of inmate by other inmates).

D18008

24. Plaintiffs believe that Bartels was expressly informed of the following acts and omissions by members of his school's faculty and by students at his school:

24.1. Robeson frequently spent the lunch period in his classroom with the lights out and the door locked with LD and no one else present.

24.2. Robeson regularly caused LD to be late for after-school athletic practices and similar activities because he was allegedly "mentoring" her, but Robeson was, as Bartels knew, not a mentor and not engaged in any post-school-day mentoring program.

24.3. Robeson was observed touching, picking up, hugging, carrying, and embracing LD, and these instances were reported to Bartels.

24.4. Bartels was aware that Robeson, on multiple occasions, took LD into his automobile and transported her to or from the school.

24.5. Robeson was known by Bartels to be absent during school hours, without official clearance to leave, and he knew, or should have known that LD was also absent from the school at the same times Robeson was absent.

25. Despite knowing these things, being confronted by faculty members, and told by students of Robeson's improper interest in, influence upon, actions involving, and conduct toward LD on terms that were discriminatory and based upon LD's gender, Bartels chose to protect Robeson and take no action. Bartels had a duty as the District's agent to act to protect the student.[6] Instead, Bartels is believed by Plaintiffs to have told at least one (1) teacher who reported some of his actions to (paraphrased): "Leave Robeson alone. He's a good guy. He's going through a divorce. He is just affectionate toward students and trying to help out. Leave him alone." Bartels conducted no investigation. He made it known that he favored and protected Robeson.

26. Bartels' refusal to respond was a conscious, deliberate decision and a decision to engage in deliberate indifference to the discriminatory actions against LD by Robeson. Bartels knew of OPS' policy prohibiting Robeson's actions and requiring action by him, but he deliberately chose to remain indifferent, ignore the policy, disregard

---

[6] *Doe v. Omaha Public Sch Dist,* 727 NW2d 447 (Neb 2007).

the need to intervene, discount the reports, support Robeson, and do nothing to provide protection for his student, LD. Even upon the arrest of Robeson when he was caught trespassing in Plaintiffs' home and the relationship between Robeson and his victim was learned by police and shared with school officials, Bartels and OPS remained deliberately indifferent to the actions committed by Robeson against LD.

27. Robeson's behaviors and actions toward LD were reported to Bartels who was the appropriate person at OPS with authority to take corrective action to end the discriminatory acts against LD. But, no corrective action was taken.

28. The harassment of LD was so severe, pervasive, and objectively offensive that it deprived LD of access to the educational benefits and opportunities provided by the Alfonza W. Davis Middle School. LD was deprived of these opportunities because she was emotionally, intellectually and physically impaired, injured, permanently scarred and damaged psychologically, and permanently changed physically. Though LD remained in school and continued to achieve reasonably good grades, LD was unable to function within the school environment to her reasonable advantage, benefit, and level of skills. Instead, she became distracted while being victimized by the manipulation of Robeson, missed and was deprived of opportunities and participation in events, and permanently suffered injury, including impairment of her ability to enjoy and learn from all aspects of the Omaha School District's activities. LD's ability to participate and gain access to educational benefits and opportunities of the school is not measured by her performance in her classes. Instead, her inability to take opportunities to socialize, her withdrawal and departure from peer groups, and school activities deprived her of the benefits of her status as an OPS student.

### Specific Actions & Omissions

29. LD was sexually assaulted and subjected to statutory rape on an unknown number of occasions believed to exceed fifty. This occurred at the school premises, in Robeson's room, and at other sites in the school. It also occurred outside school upon departure by Robeson from the school for rendezvouses with LD during the school day

9

when Robeson left the building without permissions, or on occasions and times when Robeson took LD to other locations for sexual purposes.

30. Robeson's sexual assaults occurred, primarily at the Alfonza W. Davis Middle School in his classroom, at a location observable by OPS management and relatively nearby the Principal's office. It occurred on a repeated, frequent basis. Robeson was repeatedly observed engaging in acts of impropriety that led faculty members at the Davis School to be suspicious of Robeson's interest and involvement with LD and to report it the proper person with authority to intervene and stop it.

31. One Davis teacher asked to be transferred away from the school. Plaintiffs believe this occurred because the teacher was fearful of Robeson's advances and behaviors, and distraught with the refusal of the Principal and OPS administration to deal with his behaviors.

32. At least one OPS teacher, Plaintiffs believe there are more than one, reported to the Davis building Principal that Robeson was engaged in activity that was highly suspicious and which they believed was likely to involve improper sexual contact, and certainly constituted acts requiring investigation. In accord with their instruction by OPS, these teachers "saw something and said something". But, OPS did nothing. It allowed the misconduct to go on and protected Robeson with words and attitude including those of Bartels as described previously.

33. Bartels and OPS disregarded known and obvious consequences of Robeson's actions. OPS's and Bartels' actions were not merely inept, erroneous, ineffective, or negligent; they were deliberate, conscious, defensive, and indifferent to the adverse consequences. OPS had no reason to refrain from conducting a legitimate investigation or inquiry, or reasonably responding to the matters observed and reported.

34. Robeson's conduct toward LD was discovered and exposed on December 27, 2015, when he was physically caught inside KD and JD's residence during the absence of KD, JD, and LD. This led to his arrest and conviction for first degree sexual assault. Robeson is presently serving a forty-year sentence of incarceration in the Nebraska Penal and Correctional Complex.

35. Robeson's suspicious behavior was not met with any intervention or investigative effort. Indeed, ongoing background checks to determine whether a teacher should be removed from employment were reasonable, but none were conducted.

36. Robeson was hired when his criminal record disclosed two DUI convictions. In addition, he continued to use alcohol. During the time Robeson was employed with the District, and while he was engaged in improprieties with LD, Robeson committed an alcohol related offense while driving believed to have been his third arrest for driving under the influence of alcohol. Robeson was charged and convicted of a crime and was sentenced to serve a period of incarceration of thirty days and suffer the revocation of his driving privileges. Robeson served a thirty-day sentence over the Christmas Holiday while employed by OPS, but away from work for the holiday break. OPS did not discover Robeson's conviction, or incarceration, and despite its occurrence, renewed his employment without any investigation or any sanctions whatsoever.

37. OPS, Bartels and the Doe Defendants failed to abide by OPS polices including Policy 4002 concerning personnel. It provides:

> "If the District knows or reasonably should know about possible harassment, including violence, the District will conduct a prompt, adequate, reliable, thorough, and impartial investigation to determine whether unlawful harassment occurred, and take appropriate interim measures, if necessary. If the District determines that unlawful harassment occurred, the District will take prompt and effective action to eliminate the harassment, prevent its recurrence, and remedy its effects, if appropriate."

38. Defendants are suspected to have also violated, or disregarded violations of other published polices including but perhaps not limited to OPS Policies: #2600 (Alcohol), #4005, #4006 (Absence of Employees & Absence from Building), #4009 (Drug Free Workplace), #4023 (Notification of Arrest, Criminal Charges, License or Child Abuse Complaints), #4025 (Professional Boundaries Between Employees and Students), and #4190 (Standards of Ethical & Professional Performance).

**Damages to LD and to KD and JD**

11

39. LD sustained general damages as a direct, proximate result of the acts and omissions of Defendants for:

    39.1. Temporary and lifelong, permanent injuries including Post Traumatic Stress Disorder (PTSD): Disruption of Ability to Trust: Damage to Capacity for Normal Intimate Relationships; diminished earning capacity; diminished ability to enjoy life; and need for ongoing medical and psychological care.

    39.2. Permanent interference with and impediment to LD's ability to engage and invest in a normal, healthy, and complete relationship involving the expression and receipt of love, affection, and surrender to the joys and benefits of sexual relationships.

    39.3. Permanent physical injury resulting in bodily injuries, and necessity for medical care as a direct result of sexual assault including penetration..

    39.4. Damage to and inference with the normal development of her brain, socialization skills, and exposure to events formative of the perception and appreciation of causative circumstances and correlations between events necessary to permit the deduction and appreciation of events and circumstances in the ordinary course of life. This is a permanent impairment.

    39.5. Temporary and intermittent loss of ability to concentrate, focus, express happiness, repose confidence in others, avoid conflict, and engage in the normal control of her emotions.

    39.6. Situational adjustment disorder. Temporary and permanent depression and anxiety.

    39.7. Intermittent, permanent mood alterations and mood swings, and inability to predict and control them.

Special damages include:

    39.8 Special damages for medical expenses for physical medical examinations, psychological examinations, psychiatric examinations, and implementation

12

of regimes of physical examination and mental health therapy which are ongoing and expected to be required for the rest of LD's life. These are accruing damages.

40. KD and JD have also sustained general damages for intentionally inflicted emotional distress and the acts of aiding and abetting described below, and special damages for the sums referred to in ¶ 39.8 above.

### First Claim --Violation of 20 *USC* §§ 1681 *et seq.*, Violation of Regulations of US Department of Education
### (Against OPS Only)

41. All allegations above or renewed here. This First Claim is asserted against OPS only. Robeson's actions against LD occurred because she was female.

42. At relevant times, OPS had actual knowledge of, or was reckless in disregarding information that would have led directly to actual knowledge of, the acts Robeson against LD. This actual knowledge consisted of face-to-face reports by teachers, rampant conversation by students overheard by teachers and administrators, and readily available and actually made observations of specific recurrent events including Robeson and LD alone in Robeson's classroom with the lights off and the door closed, frontal hugs, and the physical contact by Robeson with LD in the hallways and on the sidewalks, athletic fields and areas of the school, and LD's departure with Robeson in his automobile from school and school activities as well as his arrival at such activities with her. In addition, it was readily observable that Robeson departed from school during the day without arrangements or permission at times when LD was absent from school or also departed concurrently with him.

43. OPS lacked policies or procedures providing a method whereby teachers or students who observed improprieties by teachers with students could safely report them to a person with authority to act when no action was taken by a building Principal, as occurred with Mr. Bartels. OPS also lacked training for its administrators about the proper procedures for initiating investigations, conducting interviews, establishing facts, or separating and providing safety for students.

D18008

44. When reports were made, orally and in writing, and activities were observed that would have readily and promptly lead to the discovery of the occurrence of sexual assault and statutory rape on repeated occasions, over an extended time, OPS administrative personnel were deliberately indifferent to LD's safety and the irregularities with Robeson. OPS contributed actively to this indifference by permitting Robeson to continue to teach math to junior high students though he lacked professional certification or licensure to do so from the State of Nebraska, employed and continued to employ him despite his public criminal conviction record and incarceration while employed by OPS, and continued to permit him to have authority over and contact with LD month after month and over and into a second year of academic instruction despite observations of other teachers, talk of students, and complaints of Robeson's behaviors involving LD. Indeed, one OPS teacher at the Davis Middle School requested a transfer from the school, and was granted one, because of the deliberate indifference of the administration.

45. OPS receives Federal financial assistance. This assistance was used to support the programs, policies, practices, and education of OPS districtwide, including programs in which LD was involved at the Alfonza W. Davis Middle School at relevant times. Accordingly, OPS is liable under Title IX of the United States Code and specifically 20 *USC* §1681 (a). OPS has no sovereign immunity against this claim .[7]

46. OPS is liable to Plaintiffs because its deliberate indifference caused LD, on the basis of sex, and to be excluded from participation in, and denied the benefits of, or to be subjected to, discrimination under education programs and education activities receiving Federal financial assistance at Alfonza W. Davis Middle School. At all relevant times, an OPS official who had authority to address the alleged discrimination and institute corrective measures on LD's behalf had actual knowledge of the discrimination, or recklessly disregarded reports, facts and circumstances that would have led to actual knowledge with minimal inquiry, and failed to respond adequately.[8] OPS remained deliberately indifferent after acquiring actual knowledge of the harassing

---

[7] 42 *USC* §2000d-7(a).
[8] *Gebser v. Lago Vista Indep Sch Dist,* 524 U.S. 274 (1998).

D18008

activity reported to Bartels, who was the appropriate person and had the necessary authority to act to end the discrimination. The harassment that occurred of LD was so severe, pervasive and objectively offensive that it deprived her of access to the educational benefits or opportunities provided by the school.[9]

47. OPS deliberate indifference proximately caused all damages sustained by LD, and separately sustained by KD and JD, as alleged above. Plaintiffs seek judgment for those damages. They also seek judgment for costs and reasonable attorneys' fees incurred in connection with the prosecution of this claim.[10]

### Second Claim-- Violation of 42 *USC* § 1983
### (Against Bartels, Robeson and Doe Defendants Only)

48. All allegations above or renewed here. This Second Claim is asserted against Bartels, Robeson and the Doe Defendants only.

49. At all relevant times, Bartell, Robeson and the Doe Defendants were public school teachers or public school administrators and were acting in their capacity as school teachers or administrators. Their acts and omissions were those of state actors engaged in state action, i.e., the administration, management, control, supervision and education of students including LD, and proprieties, deficiencies and irregularities in the course of that state action.

50. LD was a female student and a member of a protected class of females. She was the victim of unwelcome harassment, and harassment that occurred at a time when she lacked maturity or ability to form or express assent, and was under the legal disability of her minority. The harassment occurred because LD was female and was due to her membership in the protected class. The harassment, which included the sexual assault and statutory rapes described above, affected LD's education and the privilege of her education. LD's constitutional rights, which were well-established as described

---

[9] *Gebser v. Lago Vista Indep Sch Dist,* 524 U.S. 274 (1998); Title IX "does not require specific responses [but] it does require a reasonable response once a school receives actual notice of a substantial risk." *Vance v. Spencer County Public Sch. Dist.*, 231 F3d 253, 262 (6th Cir 2000). "Often, the minimum required response to avoid 'deliberate indifference' is for the school to conduct a legitimate investigation." *Lang v. Herrera*, 2013 WL 4500739, *5 (N.D. Okla., Aug. 21, 2013).

[10] *Jacquette v Black Hawk County Ia,* 710 F2d 455, 458 fn 1 (8th Cir 1983); 42 U.S.C. §1988.

D18008

above, were violated as a direct and proximate result. LD sustained the damages described above as a direct and proximate result.

51. Robeson perpetrated the acts against LD. Bartels and the Doe Defendants engaged in culpable conduct as described above. The frequency, severity, physicality, criminality, and nature of the acts committed against LD establish that the sexual harassment, sexual assaults and statutory rape to which she was subjected affected her education and caused her to sustain damages. Her constitutional rights under *US Const* Amend XIV were violated.

52. Plaintiffs request relief as authorized by 42 *USC* §§1983, 1988. Plaintiffs seek general and special damages against the individuals sued. Because the acts and omissions of these defendants were so outrageous and so disregarded LD's constitutional rights, plaintiffs also seek punitive damages, costs and attorney's fees.

### Third Claim -- Political Subdivisions Tort Claim
### (Against OPS, Bartels & Doe Defendants)

53. All allegations above or renewed here. This Third Claim is asserted against defendants OPS, Bartels and the Doe Defendants.

54. In addition to the acts and omissions that were proximate causes of the damages alleged above, negligent acts were committed by OPS, Bartels and the Doe Defendants, which were also proximate causes of those injuries and damages.

55. These Defendants were negligent in that they:

    55.1. Failed to conduct a required and legitimate investigation.

    55.2. Failed to protect LD despite overt, observable and reporting actions by Robeson.

    55.3. Placed Robeson in a setting for which he did not have valid credentials functioning as a public school teacher and permitted him to remain there.

    55.4. Permitted Robeson to be granted his personal request that LD be placed in his Home Room for a second consecutive school year without a factual or policy basis for doing so.

55.5. Disregarded written and verbal reports of Robeson's improper actions toward LD.

55.6. Failed to investigate Robeson when he was hired and failed to learn his criminal record.

55.7. Renewed Robeson's employment, or allowed it to renew, without any background or other investigation, and without discovering his criminal acts while employed by OPS.

55.8. Failed to have and enforce a policy requiring periodic background checks for teachers and other personnel.

55.9. Failed to have or enforce a policy for reporting, and assurance of follow through following reporting of improprieties involving a teacher or other OPS employee against a student.

56. A Tort Claim was filed with the Defendant within one year of the date of the wrongful acts. The claim remained on file for six months without action by the School District. It was withdrawn by the Plaintiffs in writing on February 3, 2017. This action is commenced within the statutory time period thereafter. *Neb Rev Stat* § 13-905 *et seq.* sovereign immunity with respect to the tort claim has been waived by the State of Nebraska. *Neb Rev Stat* §13-901 *et seq.*

57. Judgment is sought got general and special damages for the nondiscretionary negligent acts and omissions of these defendants and for costs.

### Fourth Claim--Battery
### Against Robeson Only

58. The allegations of ¶¶ 1-5 and 14-40 are renewed here. This Fourth Claim is asserted against Robeson only.

59. Between the dates of approximately December 1, 2014 and December 27, 2015, Robeson committed sexual assault and battery, against LD at school, in his car, and at other locations he selected. The number of such assaults is unknown but those involving sexual penetration may exceed fifty events and the number involving sexual fondling may exceed one hundred events.

17

60. At all relevant times, Robeson was more than thirty years of age, was a person employed by OPS as a teacher and was functioning as one of LD's teachers. At all relevant times, LD was less than sixteen years of age, and was incapable, as a matter of law, of forming assent or having understanding of the consequences of Robeson's grooming, seduction and statutory rapes against her.

61. Robeson's action proximately caused physical injuries and emotional injuries to LD as alleged above. These injuries are permanent. Judgment is sought against Robeson with these damages and for costs.

### Fifth Claim--Intentional Infliction of Emotional Distress
### (Robeson Only)

62. All allegations of ¶¶ 1-5 and 14-40 and 58-61 above are renewed here. This claim is asserted against Robeson only.

63. Robeson's sexual assaults and statutory rapes of LD were intentional conduct. Robeson's actions were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and are to be regarded as atrocious and utterly intolerable in a civilized community.

64. Robeson did not subject LD to mere insults, indignities, threats, annoyances or petty oppressions. He raped LD. He grabbed her. He fondled her. He lied to her. He claimed his actions were God's Will. He promised to marry her in a church ceremony that he elaborately described to beguile LD. And he did so at school and elsewhere.

65. Robeson's conduct, aided by the deliberate indifference and the negligence of OPS and Bartels, proximately caused physical injuries and emotional distress to LD. This emotional distress is so severe that no reasonable person is expected to endure it.

66. KD and JD have also sustained general damages for intentionally inflicted emotional distress and the acts of aiding and abetting described below, and special damages for the sums referred to in ¶ 39.8 above.

67. Judgment is sought against Robeson for these general and special damages and for costs.

D18008

### Sixth Claim --Aiding & Abetting Infliction of Emotional Distress
### (Bartels and Doe Defendants Only)

68. All allegations of ¶¶ 1-5 and 14-40 and 62-67 above are renewed here.

69. Defendant Bartels and his employer OPS aided and assisted Robeson with his plan by their deliberate indifference and by turning away the reports and suspicions of professional educators who reported facts and circumstances that justified intervention by a reasonable administrator in a public school building like the Davis Middle School.

70. By warning Robeson to be discreet but refraining from acting, Bartels and OPS aided and assisted Robeson and provided help that was material to his plan to groom, seduce and sexually use LD. Bartels and OPS deliberate indifference served to encourage him and enable Robeson's assaults and battery of LD.

71. Bartels and OPS did not have discretion to refrain from protecting LD and investigating reported facts. They had a duty to act non-negligently to protect LD and to investigate, discover Robeson's actions and cause them to halt. They failed to do so.

72. Bartels and OPS are jointly and severally liable with Robeson for the damages caused by the emotional distress and physical injuries he inflicted on LD as a result of their indifference and negligence.

### Requests for Relief

73. Judgment is sought on Plaintiffs' First Claim (20 *USC* § 1681) against Defendant OPS for general damages, special damages, attorneys' fees, and costs.

74. Judgment is sought on Plaintiffs' Second Claim (42 *USC* § 1983) against Defendants Bartels, Robeson and the Doe Defendant's for general damages, special damages, punitive damages, attorneys' fees, and costs.

75. Judgment is sought on Plaintiffs' Third (Political Subdivision Tort Claim) against Defendants OPS, Bartels and the Doe Defendants for general damages, special damages and costs.

76. Judgment is sought on Plaintiffs' Fourth Claim (Battery) against Defendant Robeson for general damages, special damages and costs.

D18008

77. Judgment is sought on Plaintiffs' Fifth Claim (Intentional Infliction) against Defendant Robeson for general damages, special damages and costs.

78. Judgment is sought on Plaintiffs' Sixth Claim (Aiding & Abetting Intentional Infliction ) against Defendants Bartels and the Doe Defendants for general damages, special damages and costs.

### Demand for Jury Trial; Trial Location Designation

79. Plaintiffs demand trial by jury. Plaintiffs designate Omaha, Nebraska as the place for trial.

    KD and JD, Natural Parents, Guardians and Next Friends of LD, Plaintiffs,

By: s/ David A. Domina
David A. Domina, #11043
Brian E. Jorde, # 23613
S. Ryan Greenwood, #25943
DOMINALAW Group pc llo
2425 S. 144th St., Omaha NE 68144
(402) 493-4100
ddomina@dominalaw.com
bjorde@dominalaw.com
rgreenwood@dominalaw.com
    and
Kathleen Palleson, #19604
Spethman Palleson Law Offices L.L.C.
16145 Bedford Ave.
Omaha NE 68116
(402)-598-9428
spethmanpallesenlaw@cox.net

*Plaintiffs' Lawyers*

D18008